IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| SARAH BRADBURY, | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| v. | * | Case No. 4:23-CV-224-RSB-CLR |
| | * | |
| BRYAN COUNTY, GEORGIA, et al., | * | |
| | * | |
| Defendants | * | |

**DEFENDANTS' 12(b) MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT**

COME NOW Freddy Howell and Shannon Bancroft, Defendants in the above-styled action, and pursuant to Fed. R. Civ. P. 12(b) move the Court to dismiss all claims asserted against them in Plaintiff's Second Amended Complaint. Bryan County, which has been named as a Defendant but has not been served with process, specially appears for the limited purpose of joining this motion. In support of their motion, these Defendants respectfully show the Court the following:

**Introduction and Statement of Facts**

Mindful of Judge Tjoflat's admonition that defense counsel should avoid "diving directly into labor-intensive motions to dismiss where a motion for a more definite statement will suffice," Defendants moved to dismiss Plaintiff's second amended complaint on shotgun-pleading grounds. *Barmapov v. Amuial*, 986 F.3d 1321, 1329 (11th Cir. 2021). The Court subsequently held that although the second amended complaint is "certainly not a model of efficiency or specificity," it is not a shotgun pleading. Dkt. 35,

p. 4, citing *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1325 (11th Cir. 2015) (punctuation omitted). In accordance with the Court's invitation in its order denying dismissal on shotgun-pleading grounds, Defendants now show that the second amended complaint fails to state a claim against any of them upon which relief may be granted. Dkt. 35, p. 8 (noting that Defendants are free to file further dispositive motions to "challenge the sufficiency of the SAC's allegations to support the various claims and requests for relief asserted therein.").

The "Facts" section of Bradbury's second amended complaint comprises two paragraphs, one of which consists solely of legal conclusions. Dkt. 30, ¶ 35. The sole well-pleaded factual allegation in this section of the complaint is that "[o]n or about March 6, 2023," Bradbury "reported to Defendants Howell and Bancroft via email that a department lieutenant" had engaged in various sorts of criminal and professional misconduct. Dkt. 30, ¶ 34. From there, Bradbury's pleading launches directly into eighteen counts setting forth at least ten discrete types of claims.[1] Because the factual allegations that do appear in the second amended complaint are pleaded on a count-by-count basis, Defendants will not attempt to set forth an omnibus statement of facts, and

---

[1]    None of those counts explicitly incorporate the factual allegation set forth in paragraph 34, and a number of counts neither incorporate nor directly plead *any* supporting factual allegations. *See, e.g.,* Dkt. 30, pp. 16 (setting forth First Amendment 42 U.S.C. §1983 claim with no factual allegations), 17 (setting forth Title VII count supported only by legal conclusions). And while most of the counts of the second amended complaint do include *some* factual allegations, the majority of the counts lack basic factual information – like the dates that various actions occurred – necessary for Defendants and the Court to evaluate them.

will instead evaluate the facts pleaded in connection with each claim in the analysis below.

All of Bradbury's claims fail for reasons that are apparent on the face of the pleadings. As a preliminary matter, all of Bradbury's claims against Bryan County fail because the County has never been served with process. Her claims under Title VII and the ADA are barred by her failure to allege that she has exhausted her administrative remedies by filing a charge of discrimination with the EEOC. Her FMLA claims fail because she has not alleged sufficient facts to show that she was a covered employee. Her FMLA interference claim also fails because the facts Bradbury alleges do not rise to the level of FMLA interference, and her FMLA retaliation claim fails because the second amended complaint does not contain any allegations sufficient to establish causation. Bradbury cannot state a claim under the FLSA because she has not alleged facts establishing that any Defendant was a covered employer under the act, and also because there are no factual allegations establishing that Bradbury was a covered employee. The final federal claim in the second amended complaint, for violation of Bradbury's First Amendment rights under 42 U.S.C. §1983, fails because it is not supported by any factual allegations – and certainly not by allegations sufficient to establish that Bradbury spoke as a citizen on a matter of public concern. Additionally, Defendants Howell and Bancroft are entitled to qualified immunity on the First Amendment claim.

Bradbury's claims under Georgia law fare no better. Her six counts pleaded

under the Georgia Whistleblower Act fail with respect to Defendants Howell and Bancroft because individual liability is not available under the GWA. The only defendant against which those claims could potentially be asserted – Bryan County – has never been served. Bradbury's claim for assault is based solely on a conclusory allegation that Defendant Bancroft "verbally assaulted and berated" her, which is insufficient to state a claim under federal pleading standards. Similarly, her claim for slander is based on a non-actionable statement of opinion, and the complaint is also devoid of allegations that would allow Defendants and the Court to assess whether the slander claim was timely asserted. The count of the second amended complaint setting forth a claim for intentional infliction of emotional distress fails to plead or incorporate any relevant factual allegations, and thus cannot state a claim. And Bradbury's claim for civil conspiracy fails due to her failure to identify an underlying tort on which such a claim could be premised. Additionally, sovereign immunity would bar Bradbury's state-law claims against Bryan County had the County been validly served, and Howell and Bancroft are entitled to official immunity.

None of the eighteen counts that the second amended complaint has thrown at the wall has stuck. Bradbury's pleading fails to state a claim upon which relief may be granted with respect to any Defendant, and dismissal of the second amended complaint in its entirety is warranted.

### Standard of Review

Where a defendant challenges a complaint for failing to adequately state a claim

upon which relief can be granted, the court should apply a "two-pronged approach" in analyzing the complaint. *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). First, the court should "eliminate any allegations in the complaint that are merely legal conclusions." *Id.* This first prong excludes "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. Second, the court should assume that all well-pleaded factual allegations are true "and then determine whether [those allegations] plausibly give rise to an entitlement to relief." *Am. Dental Ass'n*, 605 F.3d at 1290. In determining plausibility, the court should "draw on its experience and common sense." *Iqbal*, 556 U.S at 663. Ultimately, if the plaintiffs have not "nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Id.* at 1289 (quoting *Twombly*, 550 U.S. at 570).

### Argument and Citation of Authority

**I.    *Plaintiff's claims against Bryan County are barred by Plaintiff's failure to make valid service.***

   *A.    Failure of summons*

"A summons – or a copy of a summons that is addressed to multiple defendants – must be issued for each defendant to be served." *Id.* "The failure of a plaintiff to obtain valid process from the court to provide it with personal jurisdiction over the defendant in a civil case is fatal to the plaintiff's case." *King v. City of Waycross, Ga.*, No. CV 514-32, 2015 WL 1525251, at *4 (S.D. Ga. Mar. 31, 2015), citing *Ayres v. Jacobs & Crumplar, P.A.*, 99 F.3d 565 (3d. Cir.1996). If the record does not show that a summons was issued to a

specific defendant, it is proper to infer that valid service of that defendant cannot possibly have been made. *See Williams v. Huseth,* No. CV421-124, 2022 WL 635428, at *1 (S.D. Ga. Jan. 28, 2022), report and recommendation adopted, No. CV421-124, 2022 WL 634375 (S.D. Ga. Mar. 3, 2022) ("Since service requires a summons, see Fed. R. Civ. P. 4(c)(1), and only the Clerk can issue a summons, see Fed. R. Civ. P. 4(b), the fact that the Clerk did not issue a summons for Huseth implies that he could not have been served.").

Bradbury identified "Bryan County Fire and Emergency Services," Shannon Bancroft, and Freddy Howell as the only defendants in her initial complaint, both in the caption of the pleading and in the case information sheet filed along with it. Dkt. 1-1, pp. 3, 40. She nonetheless attempted to obtain summons directed to Bryan County, which the clerk of Bryan County Superior Court *did not issue* – presumably because O.C.G.A. § 9-11-4(a) contemplates the issuance of summons only against "defendants," and Bryan County was not named as a defendant. *Id.*, pp. 43, 45. Then, after Defendants removed the case to this Court, Bradbury filed an amended complaint naming "Bryan County, Georgia" as a defendant for the first time. Dkt. 13. Notably, Bradbury's first amended complaint named Bryan County as a defendant *alongside* "Bryan County Fire and Emergency Services," and made distinct allegations and claims against each of them. The inclusion of both defendants in the amended complaint precludes any

argument that Bradbury believed them to be legally indistinct.[2]

Despite the fact that her amended complaint in this Court added a new defendant – Bryan County – Bradbury never requested that the clerk issue a new summons. Even after the County noted in its September 2023 motion to dismiss that it had not been validly served with process, and reiterated that defense in subsequent pleadings, Bradbury took no action to obtain a summons directed to Bryan County. Dkt. 15, p. 1. The record in this case is devoid of any such summons. Consequently, Bryan County *cannot* have validly been served with process as a matter of law, and all claims pleaded against it are properly dismissed.

   B.   *Failure of service*

If a valid summons is issued, it "must be served with a copy of the complaint" on the defendant to whom it is directed. Fed. R. Civ. P. 4(c)(1). The copy of the complaint served must be the same document that has been filed with the court. *See Anderson v. Osh Kosh B'Gosh,* 255 F. App'x 345, 346 (11th Cir. 2006) (affirming dismissal for failure to serve where, during 4(m) service period, plaintiff served defendant not with her operative pleading but "with a different complaint that she had not filed with the court").

---

   [2]   Any such argument would be fruitless in any event, as "Bryan County Fire and Emergency Services" is not a legal entity subject to suit, and claims against county departments are properly dismissed for want of a valid defendant. *See Myers v. Clayton Cnty. Dist. Attorney's Off.,* 357 Ga. App. 705, 710, 849 S.E.2d 252, 257 (2020) (affirming dismissal of county police department and district attorney's office on ground that neither of them is a "body corporate" capable of suing or being sued).

-7-

The Court need look no further than the fact that no summons was ever issued

for Bryan County to conclude that service has never been perfected on it. But Bradbury

alleges that her one attempt at making service in connection with this case on July 11,

2023, was sufficient with respect to Bryan County. Dkt. 30, ¶ 24. The record reflects that

on that day, a copy of the original complaint filed in the Superior Court of Bryan

County, which named only "Bryan County Fire and Emergency Services," Shannon

Bancroft, and Freddy Howell as defendants, was delivered – along with a summons

directed to "Bryan County Fire and Emergency Services" – to the Bryan County clerk.

Dkt. 1-1, p. 56. Pretermitting whether the Bryan County clerk is authorized to accept

service on behalf of the County under any circumstances[3], a complaint and summons

that do *not* name the county as a defendant cannot be used to accomplish service on the

county. *See* Fed. R. Civ. P. 4(a)(1)(B) (requiring that summons "be directed to the

defendant"). No other attempt at service has been made. For this additional reason,

---

[3]     Service on "a county, municipality, city, or town" must be made on "the chairman of the board of commissioners, president of the council of trustees, mayor or city manager of the city, or to an agent authorized by appointment to receive service of process." O.C.G.A. §9-11-4(e)(5). A plaintiff intending to rely on the provision allowing service on an "agent authorized by appointment to receive service of process" must point to evidence such as a provision in the city's charter allowing the person to whom documents were delivered to accept service on behalf of the city. *See City of East Point v. Jordan*, 300 Ga. App. 891, 892-93 (holding that service on city attorney was valid where city's charter explicitly authorized city attorney to acknowledge service of suits on the city and mayor acknowledged that he had designated city attorney to accept service of process on behalf of the city). Bradbury submitted the affidavit of a process server who avers that he was told by the clerk that she could accept papers on behalf of the county administrator and the chairman of the board of commissioners, but a hearsay statement from a government employee is not the sort of objective evidence of agency found sufficient by the Court of Appeals in *Jordan*. Dkt. 1-1, p. 57.

dismissal of Bradbury's claims against Bryan County is appropriate.

## II.    *Plaintiff fails to state a claim under federal law.*

### A.    *Plaintiff fails to state a claim under Title VII of the Civil Rights Act or the Americans with Disabilities Act.*

"Before a potential plaintiff may sue for discrimination under Title VII, she must first exhaust her administrative remedies," which requires "filing a timely charge of discrimination with the EEOC." *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001), citing 42 U.S.C. § 2000e–5(b). The same requirement applies to suits filed under the Americans with Disabilities Act. *Fry v. Muscogee Cnty. Sch. Dist.*, 150 F. App'x 980, 981 (11th Cir. 2005) ("Before filing suit under the ADA, a plaintiff must exhaust her administrative remedies by filing a charge with the EEOC."). "For a charge to be timely in a non-deferral state such as Georgia, it must be filed within 180 days of the last discriminatory act." *Wilkerson*, 270 F.3d at 1317.

Counts eleven, twelve, and seventeen of Bradbury's second amended complaint assert claims under Title VII and the ADA. But neither in these counts, nor anywhere else in her pleading, does Bradbury allege that she filed a charge of discrimination with the EEOC. The absence of such an allegation is fatal to Bradbury's claims under Title VII and the ADA. *See Dixon v. Gwinnett Med. Sys.,* No. 107CV02727CAMLTW, 2008 WL 11417291, at *2 (N.D. Ga. Apr. 14, 2008), report and recommendation adopted, No. 1:07-CV-2727-CAM, 2008 WL 11417391 (N.D. Ga. May 29, 2008) (granting motion to dismiss at pleadings stage where plaintiff's complaint "include[d] no allegation that

Plaintiff filed an EEOC charge or received a right-to-sue letter.").[4]

   B.  *Plaintiff fails to state a claim under the Family and Medical Leave Act.*

  "To recover on either an interference or a retaliation claim under the FMLA, the employee must have been employed for at least twelve months by the employer and worked at least 1,250 hours during the previous twelve-month period." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1247–48 (11th Cir. 2015), citing 29 U.S.C. § 2611(2)(A). "The FMLA only applies to private-sector employers with fifty or more employees." *Surtain*, 789 F.3d at 1248, citing 29 U.S.C. § 2611(4)(A). At the pleadings stage, a plaintiff must do more than "allege[] generally that she was a covered employee and that [her employer] was a covered employer for the purposes of the FMLA." *Surtain*, 789 F.3d at 1248; *Shanks v. Potter*, 451 F. App'x 815, 818 (11th Cir. 2011) (affirming dismissal of FMLA claim at pleadings stage where plaintiff "[did] not adequately alleg[e] in his complaint that he was entitled to FMLA leave"). Instead, she must plead "facts to suggest that [she] worked at least 1,250 hours of service [for the defendant] during the previous twelve-month period,"and "facts about how many people [the defendant] employed in order to demonstrate that [it] was a covered

---

  [4]  "Individual capacity suits under Title VII are . . . inappropriate. The relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the Act." *Busby v. City of Orlando,* 931 F.2d 764, 776 (11th Cir. 1991) (affirming trial court's dismissal of Title VII claims against police chief in his official capacity). Were Bradbury's Title VII and ADA claims not barred in their entirety due to her failure to file a charge of discrimination, her second amended complaint would nonetheless fail to state a claim against Defendant Howell or Defendant Bancroft in their respective individual capacities.

employer." *Burks v. DeepSeafood*, No. CV 22-00008-TFM-B, 2022 WL 16825206, at *11

(S.D. Ala. Aug. 9, 2022), report and recommendation adopted, No. 1:22-CV-8-TFM-B,

2022 WL 16815175 (S.D. Ala. Nov. 8, 2022). A complaint that fails to include such

allegations "lacks sufficient allegations to state a plausible claim for relief under the

FMLA" and is properly dimissed. *Id.*

In her second amended complaint, Bradbury alleges that she was "employed

with Bryan County Fire and Emergency Services [] from February 20, 2018, until her

termination on Feb. 1, 2024." Dkt. 30, ¶ 2. Although Bradbury alleges in conclusory

fashion that she "was entitled to FMLA leave," her pleading is silent as to how many

hours she worked in the year preceding her request for FMLA leave. Dkt. 30, ¶ 79. Nor

does Bradbury allege how many persons are employed by Bryan County. Her

complaint consequently "lacks sufficient allegations to state a plausible claim for relief

under the FMLA." Even if this were not the case, and Bradbury had made the threshold

showing that she is a covered employee and Bryan County is a covered employer under

the FMLA, her claims under that statute would fail for additional reasons.

### 1.    FMLA interference

The Eleventh Circuit has not specified what type or amount of contact between

an employer, and an employee on medical leave, constitutes FMLA interference.

*Simmons v. Indian Rivers Mental Health Ctr.*, No. 7:08-CV-1035-SLB, 2015 WL 13725503, at

*2 (N.D. Ala. Mar. 31, 2015). However, the general consensus among courts to have

considered the issue is that contact from an employer crosses the line into FMLA

interference when it amounts to "asking or requiring an employee to perform work while on leave." *Id.* at \*3; *Smith v. Arc of Cent. Alabama*, No. 2:23-CV-01467-MHH, 2025 WL 890156, at \*5 (N.D. Ala. Mar. 21, 2025). "[T]here is no right in the FMLA to be 'left alone,' and be completely absolved of responding to the employer's discrete inquiries," and contacts that do not require an employee "to perform work to benefit the company" are *de minimis* and do not materially interfere with an employee's leave. *O'Donnell v. Passport Health Commc'ns, Inc.*, 561 F. App'x 212, 218 (3d Cir. 2014), cited with approval in *Simmons*, 2015 WL 13725503 at \*2. *See also Juback v. Michaels Stores, Inc.*, 143 F. Supp. 3d 1195, 1212 (M.D. Fla. 2015) (noting lack of any authority "that supports the theory that attempts by an employer to contact an employee for a previously scheduled meeting [about a disciplinary action], or that a harsh tone by the employer when communication was established, interferes with the FMLA rights of the employee.").

Count seven of Bradbury's second amended complaint alleges that Bradbury was approved to take FMLA leave following an encounter with Defendant Bancroft, and that during that leave, Bancroft "directly call[ed] and messag[ed] her with false claims that her paperwork was not received." Dkt. 30, p. 9. She does not specify how many times Bancroft attempted to contact her, nor does she allege that she ever actually spoke with him. She does not allege that Bancroft asked or required her to perform any work during her FMLA leave. Bradbury has not pleaded any factual allegations suggesting that the contact at issue here rose to the level of FMLA interference. *Cf.*

-12-

*Smith*, 2025 WL 890156, at *5 (holding that plaintiff stated claim for FMLA retaliation by alleging that employer "continuously badger[ed] her to complete work and to return to work before [her] doctor released her to return.").

### 2.      FMLA retaliation

Claims for retaliation under the FMLA are evaluated under the *McDonnell Douglas* framework, which requires a plaintiff to establish a prima facie case by demonstrating "(1) she engaged in statutorily protected activity, (2) she suffered an adverse employment decision, and (3) the decision was causally related to the protected activity." *Schaaf v. Smithkline Beecham Corp.*, 602 F.3d 1236, 1243 (11th Cir. 2010). "To establish a causal connection, a plaintiff must show that the relevant decisionmaker was aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated." *Jones v. Gulf Coast Health Care of Delaware, LLC*, 854 F.3d 1261, 1271 (11th Cir. 2017) (citation and punctuation omitted). "A plaintiff may plead the causation element by alleging facts that show a statutorily protected activity and an adverse employment action were temporally proximate, but temporal proximity alone is insufficient unless the events are "very close." *McGuire v. United Parcel Serv., Inc.*, 763 F. App'x 890, 898 (11th Cir. 2019). At the pleadings stage, a plaintiff hoping to establish causation by way of temporal proximity must "provide dates" of the alleged protected activity and the alleged retaliation. *Id.* at 899. "[F]ailure to plead those dates [is] fatal to [her] claim." *Id.*

Count eight of the second amended complaint sets forth an FMLA retaliation

claim that is almost entirely devoid of supporting factual allegations. The first paragraph alleges that "[f]ollowing her return from FMLA leave, Plaintiff suffered multiple adverse employment actions, including denial of promotion." Dkt. 30, ¶ 85. But neither in count eight, nor anywhere else in the second amended complaint, does Bradbury identify the dates she was on the FMLA leave for which Defendants allegedly retaliated. Elsewhere in her pleading, Bradbury alleges that she "took FMLA leave and personal time off on multiple occasions," and in yet another count, she refers to "Feb. 1, 2024 [] FMLA leave (separate from the FMLA leave listed above."). Dkt. 30, ¶ 141. Nowhere in the second amended complaint is any date other than February 1, 2024, provided in connection with FMLA leave. Count eight is likewise silent as to the date of any alleged adverse action against Bradbury. Consequently, Bradbury fails to plead sufficient facts to establish the causation element of her claim for FMLA retaliation.[5]

----

[5] Count eight falls far short of setting forth the required elements for a claim of FMLA retaliation for multiple other reasons, as well. There is no allegation that Howell, who is seemingly implied to be the decision maker with respect to the promotion at issue, was aware that Bradbury had taken FMLA leave. And there are no allegations that Bradbury had applied for, or was qualified for, a "promotion to battalion chief," other than the conclusory allegation that Bradbury "was eligible." Dkt. 30, ¶ 88. Finally, any argument by Bradbury that she was not required to allege facts establishing temporal proximity to show causation would fail; the allegations of count eight suggest, at most, that Howell allowed promotion decisions to be influenced by his views regarding mental health diagnoses – not that Bradbury was denied a promotion as a result of antipathy related to her FMLA use, specifically. *See Jones v. Gulf Coast Health Care of Delaware, LLC,* 854 F.3d 1261, 1271 (11th Cir. 2017) (finding remarks by supervisor that "'corporate' would not like the timing of [employee's] FMLA leave," and that employee was being suspended because "because corporate believed that he had abused and misused his FMLA leave," insufficient to establish FMLA retaliation, and requiring employee to establish temporal proximity).

C.      *Plaintiff fails to state a claim under the Fair Labor Standards Act.*

"The FLSA's overtime provisions requires employers to compensate covered employees at least one and one-half times the regular rate of pay for all hours worked by the employee in excess of forty hours per week." *Day v. Velissaris*, No. 1:22-CV-4987-TWT, 2023 WL 3743147, at *4 (N.D. Ga. May 31, 2023), citing 29 U.S.C. § 207(a)(1). "To state a cause of action under the FLSA, an employee must first allege an employment relationship." *Blake v. Batmasian*, 191 F. Supp. 3d 1370, 1375 (S.D. Fla. 2016), citing *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1277 n. 68 (11th Cir.2008). An employment relationship under the FLSA requires "operational control," *Blake*, 191 F. Supp. 3d at 1376, and a plaintiff may discharge her burden at the pleadings stage by alleging facts demonstrating that her employer "controlled [her] schedule and work site, in addition to exercising control over payroll decisions and maintaining payroll records." *Day v. Velissaris*, No. 1:22-CV-4987-TWT, 2023 WL 3743147, at *5 (N.D. Ga. May 31, 2023).

An FLSA plaintiff must also plead that she is a covered employee under the statute, either by demonstrating individual coverage or enterprise coverage. *Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1265–66 (11th Cir. 2006). For individual coverage to apply, an employee must show "that she directly participat[es] in the actual movement of persons or things in interstate commerce," either by working for an instrumentality of interstate commerce such as the transportation industry, or by regularly using instrumentalities of interstate commerce, such as interstate phone or

mail, in her work. *Id.* Enterprise coverage applies where an employee works for an employer that "has employees engaged in [interstate] commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and (2) has at least $500,000 of "annual gross volume of sales made or business done." *Polycarpe v. E&S Landscaping Serv., Inc.*, 616 F.3d 1217, 1220 (11th Cir. 2010) (citation and punctuation omitted). "FLSA allegations that merely incant the words 'engaged in interstate commerce,' rather than provide factual allegations regarding the nature of that commerce, cannot survive a motion to dismiss." *Day v. Seabreeze Retreat LLC*, No. 1:20-CV-03315-JPB, 2021 WL 9772286, at *3 (N.D. Ga. July 30, 2021). *See also Day v. Velissaris,* No. 1:22-CV-4987-TWT, 2023 WL 3743147, at *5 (N.D. Ga. May 31, 2023) (holding at pleadings stage that plaintiff failed to adequately allege FLSA coverage where he "essentially alleged only that he was employed as a transportation captain without providing any further facts as to his job duties").

Count six of Bradbury's complaint alleges that Defendant Bancroft began "denying Plaintiff the opportunity to adjust her timecard for off-duty work." Dkt. 30, ¶¶ 65, 74. Bradbury states without further explanation that this amounted to "requiring [her] to work with no exchange of compensation or time off," in violation of the FLSA. *Id.,* ¶¶ 70, 74, 75. But the second amended complaint contains no factual allegations indicating that any of the Defendants was Bradbury's employer for the purposes of the FLSA, and no allegations suggesting that Bradbury was a covered employee. Bradbury

does not allege, even in conclusory fashion, that any of the Defendants exercised "operational control" over her employment, and she certainly does not plead the sort of facts regarding control over her schedule, worksite, and pay that would actually allow her to make this showing. Likewise, the second amended complaint is entirely silent about the nature of the business engaged in by Bradbury and/or her putative employer; she states only that she was "a lieutenant with BCFES," and that Bryan County "is a county governmental entity." Dkt. 30, ¶¶ 3, 5. Bradbury has thus failed to plead that one or more of the Defendants was her employer, and has failed to plead that she was a covered employee under the FLSA. For each of these independently sufficient reasons, she cannot state a claim under the FLSA.

> D. *Plaintiff fails to state a claim under 42 U.S.C. §1983 for violation of her First Amendment rights.*

### 1. Plaintiff does not allege a First Amendment violation.

"Although a government employer may not demote or discharge a public employee in retaliation for speech protected under the first amendment, a public employee's right to freedom of speech is not absolute." *Carter v. City of Melbourne, Fla.*, 731 F.3d 1161, 1168 (11th Cir. 2013) (citation and punctuation omitted). Evaluation of a government employee's claim for First Amendment retaliation begins with the question of "whether [the p]laintiff's speech was made as a citizen and whether it implicated a matter of public concern." *Moss v. City of Pembroke Pines*, 782 F.3d 613, 617 (11th Cir.

2015) (citation and punctuation omitted).[6] "[A] public employee cannot meet the threshold for proving a First Amendment violation merely by showing that the speech at issue addressed a subject of public concern. He must also show that he spoke in his capacity as a citizen, rather than as an employee." *Id.* at 618. "The central inquiry is whether the speech at issue owes its existence to the employee's professional responsibilities," and factors such as "the employee's job description, whether the speech occurred at the workplace, and whether the speech concerns the subject matter of the employee's job" may all be relevant to this inquiry. *Id.*, citing *Garcetti v. Ceballos*, 547 U.S. 410, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006) (punctuation omitted).

"The burden of proof is upon plaintiff to demonstrate that his speech was as a citizen on a matter of public concern." *Stone v. City of Everglades City, Fla.*, No. 205CV-209-FTM-29SPC, 2007 WL 924447, at *5 (M.D. Fla. Mar. 26, 2007), citing *Morales v. Stierheim*, 848 F.2d 1145, 1148 n. 4 (11th Cir. 1988) & *Ferrara v. Mills*, 781 F.2d 1508, 1514 (11th Cir. 1986). Where a plaintiff's First Amendment retaliation claim is predicated on speech that was "exclusively made at the workplace and directed toward other [] employees," she cannot state a claim absent some "other allegations enabling [a] court to disentangle her speech from its overwhelmingly professional context." *Boglin v. Bd. of Trs. of Alabama Agric. & Mech. Univ.*, 290 F. Supp. 3d 1257, 1268 (N.D. Ala. 2018).

---

[6]      As the Eleventh Circuit noted in *Moss*, three additional steps follow this first one in the analysis of public-employee First Amendment retaliation claims. 782 F.3d at 617. Bradbury cannot meet *any* of the four stages of the test, but because her second amended complaint is entirely lacking in supporting factual allegations for this count, Defendants will not belabor the remaining elements.

Likewise, to demonstrate that she "intended to address matters of public concern from the perspective of a citizen," a public employee plaintiff must allege facts sufficient to "support a plausible inference that [her statements] were intended to raise an issue [] for the public's benefit" – such as allegations that she "sought to publicize her concerns," "raised and discussed" the concerns outside the confines of her place of employment, or "intended her internal complaints to alert the public to wrongdoing on the part of [government] officials." *Id.* at 1270.

Count fifteen of the second amended complaint comprises three paragraphs, and incorporates no factual allegations from other portions of the pleading. Bradbury alleges in conclusory fashion that "Bancroft and Howell's retaliation against Plaintiff for reporting violations of law and matters of public concern deprived her of her First Amendment rights." Dkt. 30, ¶ 135. The final paragraph of the count provides a bit more information, stating that "Plaintiff's disclosures and reporting" played a part in Defendants' "retaliation and decisions not to promote her, their refusal to [move her to a different position], and her ultimate termination." *Id.*, ¶ 137. Nothing within the four corners of count fifteen provides any additional information about what the "disclosures and reporting" or "retaliation" entailed, when they occurred, or how each Defendant was involved in them.

Even assuming that the "disclosures and reporting" and "retaliation" referenced in count fifteen are the same ones discussed elsewhere in the second amended complaint, Bradbury falls far short of stating a claim for First Amendment retaliation.

The scant factual allegations in her complaint indicate that the speech at issue was made at Bradbury's place of employment, made about a coworker, and made exclusively to fellow employees. The second amended complaint contains no allegations that could serve to disentangle this speech from its "overwhelmingly professional context," and dismissal is warranted for this reason alone. *Boglin*, 290 F. Supp. 3d at 1268 (holding that plaintiff failed to state a claim for First Amendment retaliation due to lack of factual allegations to support conclusion that employee spoke as a private citizen). Moreover, Bradbury alleges no facts that could support an inference that her internal reporting of a coworker's alleged misconduct was actually intended to bring that misconduct to the attention of the public. *Id.* at 1270. For this second and independently sufficient reason, the second amended complaint fails to state a claim for First Amendment retaliation.

### 2. Defendants Howell and Bancroft are entitled to qualified immunity.

"The doctrine of qualified immunity protects government officials from liability for civil damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.'" *Wood v. Moss*, 572 U.S. 744, 757, 134 S. Ct. 2056, 2066–67, 188 L. Ed. 2d 1039 (2014) (citation and punctuation omitted). "[The] "clearly established" standard demands that a bright line be crossed. . . . If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1557 (11th Cir. 1993) (citations and punctuation omitted). At the pleadings stage, the burden is on a plaintiff who may

face qualified immunity to plead "sufficient factual matter" to show that a clearly established right has been violated. *Wood v. Moss*, 572 U.S. 744, 757, 134 S. Ct. 2056, 2067, 188 L. Ed. 2d 1039 (2014), quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

The allegations of the second amended complaint disclose that Howell and Bancroft were acting within their discretionary capacities at all relevant times, and indeed, Bradbury does not allege otherwise. *See Minnifield v. City of Birmingham Dep't of Police,* 791 F. App'x 86, 90 (11th Cir. 2019) (holding that supervisory public safety employee acts within scope of his discretionary authority when he makes hiring recommendations). And Bradbury has pleaded no facts that could support a conclusion that Howell and Bancroft "would have understood [their] acts were unlawful." *Post*, 7 F.3d at 1557. Indeed, at least one sister court has held that allegations functionally identical to the ones in Bradbury's second amended complaint fail to state a claim that a plaintiff's First Amendment rights were violated. *Boglin v. Bd. of Trs. of Alabama Agric. & Mech. Univ.*, 290 F. Supp. 3d 1257, 1268 (N.D. Ala. 2018). "We cannot realistically expect that reasonable police officers know more than reasonable judges about the law," and a federal judge's conclusion that allegations like the ones in Bradbury's complaint do *not* state a claim effectively precludes Bradbury from showing that the law was clearly established in the opposite direction. *Barts v. Joyner*, 865 F.2d 1187, 1193 (11th Cir. 1989). Had Bradbury otherwise pleaded a viable First Amendment retaliation claim, it would be barred by qualified immunity with respect to Defendants Howell and Bancroft.

### III.    *Plaintiff fails to state a claim under Georgia law.*

#### A.    *Plaintiff fails to state a claim under the Georgia Whistleblower Act.*

"[T]here is no remedy against individual defendants in their personal capacity under the Whistleblower Act." *Rintoul v. Tolbert*, 341 Ga. App. 688, 689, 802 S.E.2d 56, 57 (2017). Defendants Howell and Bancroft, in their individual capacities, are thus entitled to dismissal of counts one, three, four, five, ten, thirteen, and eighteen of Bradbury's second amended complaint. The only Defendant with respect to which Bradbury could ever potentially state a claim under the GWA – Bryan County – has never been served. The second amended complaint fails to state a claim under the GWA against any Defendant who is properly before the Court.

#### B.    *Plaintiff fails to state a claim for assault.*

Allegations that a defendant "insulted and verbally bullied" a plaintiff do not "come[] close to satisfying the elements of any potential civil claim under state or federal law," and in particular, do not state a claim for "verbal assault." *Wunderlich v. Conklin*, No. CV 122-025, 2022 WL 1548109, at *4 (S.D. Ga. Apr. 21, 2022), report and recommendation adopted, No. CV 122-025, 2022 WL 1540212 (S.D. Ga. May 16, 2022). Count two of Bradbury's complaint sets forth a complaint for assault under Georgia law, but the only factual allegation offered in support of that claim is that Bancroft "sought out Plaintiff at her duty station and verbally assaulted and berated her" for making a report of misconduct about one of her coworkers and copying Howell on the email. Dkt. 30, ¶ 42. Because the complaint contains nothing beyond this single "naked

allegation that [Bancroft] insulted and verbally bullied Plaintiff," and does not "include any specifics about what was said," the second amended complaint fails to state a claim for assault. *Wunderlich*, 2022 WL 1548109 at *4.

       C.      *Plaintiff fails to state a claim for slander.*

To plead a cause of action for defamation under Georgia law, a plaintiff must allege (1) a false and defamatory statement about herself; (2) an unprivileged communication to a third party; (3) fault by the defendant; and (4) special damages or "the actionability of the statement irrespective of special harm." *StopLoss Specialists, LLC v. VeriClaim, Inc.*, 340 F. Supp. 3d 1334, 1346 (N.D. Ga. 2018). "[A] defamation action will lie only for a statement of fact," because "a statement that reflects an opinion or subjective assessment, as to which reasonable minds could differ, cannot be proved false." *Gettner v. Fitzgerald*, 297 Ga. App. 258, 261, 677 S.E.2d 149 (2009). Allegations that a plaintiff's manager told other employees that she was "psycho," or that "she was trouble," are non-actionable because they are "opinion[s] of another person's personality" with respect to which reasonable minds may differ. *Pospicil v. Buying Off., Inc.*, 71 F. Supp. 2d 1346, 1354 (N.D. Ga. 1999). Claims for injury to reputation in Georgia are governed by a one-year statute of limitations. O.C.G.A. §9-3-33.

Bradbury alleges in count fourteen of her second amended complaint that Defendant Bancroft "told another lieutenant to 'stay away from Bradbury' in a manner that alluded to her being incompetent or troublesome." Dkt. 30, ¶ 129. This is a non-actionable statement of opinion that does not give rise to a claim for defamation.

Moreover, count fourteen of Bradbury's pleading is silent as to the date of the alleged defamatory statement, and would thus fail to state a *timely* claim for defamation even if the statement at issue were potentially defamatory.

      D.      *Plaintiff fails to state a claim for intentional infliction of emotional distress.*

Count sixteen of Bradbury's second amended complaint alleges that "Defendant Bancroft's actions" and "Defendant Howell's actions" caused Bradbury emotional distress. Dkt. 30, ¶¶ 138, 139. It further alleges that Bradbury was denied a promotion, and terminated, "due to the malicious acts of Defendants." *Id.*, ¶¶ 142, 143. But count sixteen neither pleads, nor incorporates, any factual allegations whatsoever; there is no information within the four corners of the count about what "actions" and "acts" underlie Bradbury's claim for intentional infliction of emotional distress. Count sixteen amounts to nothing more than "threadbare recitals of a cause of action's elements, supported by mere conclusory statements," and it thus fails to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

      E.      *Plaintiff fails to state a claim for civil conspiracy.*

"To recover damages for a civil conspiracy claim, a plaintiff must show that two or more persons, acting in concert, engaged in conduct that constitutes a tort. Absent the underlying tort, there can be no liability for civil conspiracy." *Patel v. Diplomat 1419VA Hotels, LLC*, 856 S.E.2d 340, 348 (Ga. Ct. App. 2021) (citation and punctuation omitted). "Absent the underlying tort, there can be no liability for civil conspiracy," and dismissal of a claim for civil conspiracy is required if the plaintiff's claims with respect

to the underlying tort or torts fail. *Id.* Count nine of Bradbury's second amended complaint alleges a civil conspiracy, but does not identify any tort that was committed as a result of the alleged conspiracy. Dkt. 30, pp. 11-12. The count incorporates the entirety of Bradbury's claim for FMLA retaliation, but FMLA violations are not torts. *See McCalla v. Avmed, Inc.,* No. 11-60007-CIV, 2011 WL 3918538, at *9 (S.D. Fla. Sept. 6, 2011) (distinguishing between FMLA and "state tort law"). Moreover, even if any of the state-law tort counts in Bradbury's pleading had been incorporated into her claim for conspiracy, none of those counts state a claim, and the claim for conspiracy would still fail.

F.   *Plaintiff's state-law claims are barred by sovereign immunity and/or official immunity.*

Because Bradbury fails to state a claim under Georgia law, Defendants will not belabor their immunity defenses. However, had Bryan County been served, it would be entitled to sovereign immunity on Bradbury's state-law claims. *Gilbert v. Richardson*, 264 Ga. 744, 747, 452 S.E.2d 476, 479 (1994). Defendants Howell and Bancroft are entitled to official immunity because the second amended complaint does not allege facts showing that they performed a ministerial function negligently, or performed a discretionary function with actual malice. *Selvy v. Morrison*, 292 Ga. App. 702 (2008).

## Conclusion

For the foregoing reasons, Defendants respectfully request that the Court dismiss Bradbury's second amended complaint with prejudice.

Respectfully submitted, this eleventh day of April, 2025.

/s/ Richard K. Strickland
Richard K. Strickland
Georgia Bar No. 687830

/s/ Emily R. Hancock
Emily R. Hancock
Georgia Bar No. 115145

BROWN, READDICK, BUMGARTNER,
CARTER, STRICKLAND & WATKINS, LLP
5 Glynn Avenue (31520)
Post Office Box 220
Brunswick, GA 31521
(912) 264-8544
(912) 264-9667 FAX
rstrickland@brbcsw.com
ehancock@brbcsw.com

**ATTORNEYS FOR DEFENDANTS**