SARAH BRADBURY,

       Plaintiff,

      v.

BRYAN COUNTY, GEORGIA; FREDDY
HOWELL; and SHANNON BANCROFT, in
their individual and official capacities,

       Defendants.

Civil Action No.:
4:23-CV–224-RSB-CLR

## PLAINTIFF'S RESPONSE AND BREIF IN OPPOSOTION TO DEFENDANTS' 12(b) MOTION TO DISMISS

**COMES NOW**, Plaintiff Sarah Bradbury, by and through her counsel of record, and files this Response and Brief in Opposition to Defendants' 12(b) Motion to Dismiss, and shows this court as follows:

### Introduction and Statement of Facts

Defendants previously filed their Motion to Dismiss Plaintiff's Second Amended Complaint ("SAC") arguing it was a shotgun pleading that failed to provide factual allegations and identify which Defendant the allegations were being brought against. Dkt. 30. The Court denied Defendant's motion finding it provided Defendants with adequate notice of the claims brought against them. Dkt. 35.

Defendants have now filed a 12(b) Motion to Dismiss Plaintiff's SAC arguing Defendant Byran County has not been properly served with process and That Plaintiff has failed to state a claim under federal and Georgia laws. Dkt. 37. For the reasons set forth below, Defendants' motion to dismiss should be denied.

**Standard of Review**

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Newbauer v. Carnival Corp.*, 26 F.4th 931, 934, 29 Fla. L. Weekly Fed. C 857 (11th Cir. 2022).

**Argument and Citation of Authority**

I.      *Plaintiff's claims against Bryan County are not barred because Plaintiff made valid service on Bryan County.*

A. *Plaintiff's Summons was ultimately proper.*

Defendants contend that Plaintiff never had summons issued for Bryan County and that the only summons issued was for Bryan County Fire and Emergency Services (BCFES), which Defendants further allege is an entity that cannot be sued. Defendants' citation of case law corresponds with their argument and Plaintiff does not necessarily disagree with it. However, Plaintiff does have strongly disagree with Defendants' interpretation of the meaning of counties, their entities and their ability to be sued.

The Georgia Court of Appeals, in affirming its ruling in *Myers v. Clayton Cty. Dist. Attorney's Office*, 357 Ga. App. 705, 849 S.E.2d 252 (2020), concluded that municipal police departments (and county police departments) are not separate legal entities subject to suit because they *are merely agents or instrumentalities of the municipality* (emphasis added). *McClain v. City of Carrollton Police Dep't*, 361 Ga. App. 496, 498, 863 S.E.2d 172, 173 (2021). Further, Federal

Courts interpreting Georgia law have reasoned that county and city police departments are not proper party defendants because said departments are an integral part of the county's or city's government and *are merely the vehicle through which the county or city government fulfills its functions* (emphasis added). *See Shelby v. City of Atlanta*, 578 F. Supp. 1368 (1984) (N.D. Ga.); *Lovelace v. DeKalb Central Probation*, 144 Fed. Appx. 793, 795 (2005) (11th Cir. U.S. Court of Appeals); *McDuffie v. DeKalb County Police Department*, 2016 WL 7239954 (N.D. Ga. 2016).

In the present case, there can be no dispute that BCFES is an agent and vehicle of Bryan County. Bryan County performs its fire and emergency services through BCFES. Essentially, BCFES is an administrative division of Bryan County and by suing an administrative division of Bryan County, Plaintiff has effectively and implicitly sued Bryan County. This means that the summons that was issued by the Bryan County Clerk on July 7, 2023 for BCFES was effectively a summons for Bryan County because BCFES is a division of Bryan County. Even more, the entire purpose of a summons is to *provide notice* (emphasis added) to a defendant of the proceedings being brought against it. The fact is that the summons issued for BCFES is more than enough for Defendants to know that Bryan County was being sued by Plaintiff. From a simple standpoint, there is only one Bryan County in the State of Georgia and only one Bryan County that oversees BCFES.

Defendants further argue in their citations that failure to issue a summons for a specific defendant allows for the inference that valid service of that defendant cannot be made. However, that argument fails in this case simply because of the fact that BCFES is the same entity as Bryan County. No inference is needed because this is not a case where there are two entirely different defendants. More specifically, both are the same entity and the same defendant and any claims made against BCFES are claims made against Bryan County. Defendants further contend that

because Plaintiff's SAC contained both BCFES and Bryan County that inclusion of both as defendants precludes any argument Plaintiff could make that they are legally indistinct. However, this argument is irrelevant, because of the fact that both Bryan County and BCFES are indeed the same entity and there can be no dispute to this fact. Defendants cannot have it both ways in arguing that BCFES is an entity that cannot be sued while at the same time ignoring the fact that BCFES is an arm of Bryan County.

### B. Service was properly made upon Bryan County

Given that BCFES is effectively the same entity as Bryan County, the summons issued for BCFES was effectively a summons for Bryan County. Defendants now contend that Bryan County was also not validly served, however, this argument also fails. O.C.G.A. § 9-11-4(e)(5) specifically provides that service against a county shall be made to the chairman of the board of commissioners or to an agent authorized by appointment to receive service of process.

Defendants point to *City of E. Point v. Jordan*, 300 Ga. App. 891, 686 S.E.2d 471 (2009) in an attempt to argue that Plaintiff's service on the Bryan County Clerk was not perfected service. Defendants fail to recognize that *City of E. Point v. Jordan* did not hold that a City's charter (or a County Ordinance) has to appoint a specific individual in order for that individual to receive service of process. The fact that a charter or ordinance specifically appoints an agent to receive service of process is one part of the total evidence that can be used to show that an agent was appointed. *Id*. It can be enough for the appointee to hold themselves out to the process server as someone who could accept service on behalf of the County. *Id.* Further, in the aforementioned case, evidence was provided to show that the city attorney held herself out to be someone who could receive service of process, in addition to the city clerk and other employees that claimed the city attorney was able to accept service of process. *Id.* The process server was directed to the city

attorney's office and when the process server handed the city attorney the summons and complaint, the city attorney informed the process server that *"I can accept these"*. *Id.* The Appellate Court ultimately found that service was perfected upon the city attorney and not only because of the city charter that appointed the city attorney to receive service of process, but also because of the fact that the city attorney held herself out as someone who could receive service of process. *Id.*

In the present case, it is important to note first that pursuant to O.C.G.A. § 9-11-4(e)(5), Carter Infinger is the chairman of the board of commissioners authorized to receive service of process. The summons that was issued by the Bryan County Clerk of Superior Court properly listed Carter Infinger as the individual to receive service of process for BCFES (which is Bryan County) in addition to the Sheriff's Entry of Service (SEOS), which also properly listed Infinger and the Bryan County Board of Commissioners address. Dkt. 1. Further, the Sheriff's Entry of Service (filed in Bryan County Superior Court on July 13, 2023) showed that BCFES was served on July 11, 2023 to the Board of Commissioners' address and delivered to Lori Tyson, the Bryan County Clerk. Further, BCFES was again served on July 21, 2023 via private process server. Dkt. 32. The Affidavit of Service provided by the process server indicated that Lori Tyson stated to him that she could accept service on behalf of the Chairman (Infinger). Dkt. 32. Tyson also stated that she had to call the County Attorney to verify what to do next when the process server indicated that he needed to serve Infinger personally, as Tyson had never dealt with this experience before (the experience being that a process server wanted to serve the chairman personally after Tyson had stated that she could accept service). Dkt. 32. The County Attorney further reiterated that Tyson could accept service on behalf of the Chairman. As a result, the process server again asked Tyson if she acknowledged and accepted service on behalf of the Chairman of which Tyson answered in the affirmative. Dkt. 32.

Just as the city attorney in *City of E. Point v. Jordan,* Tyson held herself out to the private process server that she could accept service on behalf of the Chairman. Also, just as in *City of E. Point v. Jordan,* Tyson specifically stated that she could accept the service on behalf of the Chairman. This is further implicated by the fact that Tyson had to inquire with the County Attorney on how to proceed when the process server initially did not want to serve her instead of the Chairman, indicating that she frequently receives service of process on behalf of the Chairman. Even more, the County Attorney held Tyson out to the process server as someone that could accept service on behalf of the Chairman. It is quite clear that Tyson was an appointed agent to receive service of process on behalf of the Chairman in nearly the exact same manner as the Court in *City of E. Point v. Jordan* found that the City Attorney was appointed to receive service of process. This means that Tyson was a properly appointed agent pursuant to O.C.G.A. § 9-11-4(e)(5) and could accept service on behalf of the Chairman. As a result, BCFES was properly served twice, once by the Bryan County Sheriff's Office on July 11, 2023 and again via a private process server on July 21, 2023. It is because of the aforementioned that service was perfected on Bryan County.

II. *Plaintiff properly states a claim under federal law*

A. *Plaintiff properly states a claim under 42 U.S.C.§1983 for violation of her First Amendment Rights*

1. Plaintiff alleges a First Amendment Violation

The First Amendment limits the situations in which government officials may dismiss or demote an employee when an employee engages in protected speech. *Heffernan v. City of Paterson, N.J.*, 136 S.Ct. 1412, 1416, 194 L. Ed. 2d 508 (2016); *Carter v. City of Melbourne, Fla.*, 731 F.3d 1161, 1168 (11th Cir. 2013). U.S. District Courts evaluate First Amendment retaliation claims by using a four-part test. *Moss v. City of Pembroke Pines*, 782 F.3d 613, 617-18 (11th Cir.

2015). First, if the plaintiff spoke as a citizen about a matter of public concern, then, secondly, the court must "weigh Plaintiff's First Amendment interests against the City's interest in regulating his speech to promote 'the efficiency of the public services it performs through its employees.'" *Moss*, 782 F.3d at 618 (quoting *Pickering v. Bd. of Educ. of Twp. High Sch. Dist.*, 391 U.S. 563, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968)). Third, if the plaintiff's First Amendment interest prevails, then the plaintiff must show that the protected speech "was a substantial motivating factor" in an adverse employment action. *Moss,* 782 F.3d at 618. Finally, if the plaintiff satisfies the first three parts of the test, then at the final step of the analysis, the burden shifts to the defendant to show that the defendant would have terminated the plaintiff even in the absence of the protected speech. *Moss*, 782 F.3d at 618.[1] It is important to note that the first two prongs of this test, essentially the ones at issue by Defendant, are questions of law for the Court to decide. *Bryson v. City of Waycross*, 888 F.2d 1562, 1565 (11th Cir. 1989).

With respect to the first prong, a statement made by a public employee outside the scope of that employee's official job duties is speech as a citizen under the First Amendment. *Lane v. Franks*, 573 U.S. 228, 238, 134 S. Ct. 2369, 189 L. Ed. 2d 312 (2014). Speech deals with matters of public concern when it can be fairly considered as related to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest, which includes a subject of general interest and of value and concern to the public. *Snyder v. Phelps*, 562 U.S. 443, 453, 131 S. Ct. 1207, 179 L. Ed. 2d 172 (2011). The Courts have found that issues such as corruption in public programs, governmental inefficiency, governmental misconduct and whether police officers are properly performing their duties are examples of matters of public concern.

---

[1] Because Defendant only argues with respect to the first two prongs of the test, Plaintiff's response addresses those two arguments.

*Garcetti v. Ceballos, 547 U.S. 410, 425, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006)*; *Fikes v. City of Daphne*, 79 F.3d 1079, 1084 (11th Cir. 1996).

Again, with respect to the first prong, Plaintiff's SAC states that she reported acts of sexual assault, battery, harassment of recruits and other misconduct to Defendants. Dkt. 30, ¶34. Further, the record also shows that Plaintiff was a lieutenant with BCFES. Dkt. 30, ¶3. The record also shows that Plaintiff's job duties as a lieutenant did not include her reporting sexual assault, battery, harassment or other misconduct. Dkt. 13, ¶33. As such, it is pretty clear that when she reported the misconduct to Defendants, that she was speaking as a citizen outside the scope of her official job duties. Her job duties required her to be an EMS and firefighter lieutenant, not reporting misconduct of other employees. Thus, it is clear that Plaintiff's reports to Defendants were made as a citizen because her reporting of the misconduct fell outside the scope of her official job duties. Furthermore, common sense would dictate that reports of sexual assault, battery and misconduct are matters of public concern, just as the Courts have already previously ruled. At a very basic level, the fact that there is a government employee engaging in severe misconduct and sexual abuse is obviously a subject of general interest and of value and concern to the public. This individual is employed and works for the public, obviating that the public would want to know about this employee's misconduct. Thus, Plaintiff's reporting of the misconduct to Defendants was made as a citizen on a matter of public concern and it cannot be seen any other way.

2. Defendants Howell and Bancroft are not entitled to qualified immunity.

Qualified immunity protects government officials performing discretionary functions from civil trials and from liability if their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known. *Foy v. Holston*, 94 F.3d 1528, 1532 (11th Cir. 1996). A right is clearly established if, in light of already-existing law, the

unlawfulness of the conduct is apparent. *Akins v. Fulton Cty., Ga.,* 420 F.3d 1293, 1305 (11th Cir. 2005). In order to demonstrate that a defendant had fair waring that the conduct would violate clearly established federal law, the plaintiff can show that:

> the law at the time clearly established that [the defendant's] conduct would violate the Constitution, [the plaintiff] might point to either (1) earlier case law from the Supreme Court, [the Eleventh Circuit Court of Appeals], or the highest court of the pertinent state that is materially similar to the current case and therefore provided clear notice of the violation or (2) general rules of law from a federal constitutional or statutory provision or earlier case law that applied with 'obvious clarity to the circumstances, establishing clearly the unlawfulness of [the defendant's] conduct.

*Long v. Slaton*, 508 F.3d 576, 584 (11th Cir. 2007). The Eleventh Circuit has held that, a core concern of the first amendment is the protection of the whistle-blower attempting to expose government corruption. *Bryson v. Waycross*, 888 F.2d 1562, 1566-67 (11th Cir. 1989). It is clearly established that a public employer may not fire an employee for reporting corruption. *Carollo v. Boria*, 833 F.3d 1322 (11th Cir. 2016).

In Plaintiff's case, one of the main tenets of Plaintiff's claims are that she was terminated for her whistleblowing activities. Dkt. 30. Notwithstanding this, it is common sense that the reporting of an employee that is engaging in sexual assault and other misconduct is the reporting of government corruption, especially when that employee goes unpunished. Plaintiff reported government corruption to Defendants, of which they terminated her, something that Plaintiff pleaded in the SAC in Count 14. Dkt. 30. As was noted above, it has been clearly established law since at least 2016 that Defendants could not fire Plaintiff because of her whistleblowing activities. It is obvious that this is illegal and Defendants, as they contend, are not ordinary officers. Defendants were both superiors to Plaintiff, with Howell even being the county fire chief and director of emergency services. It is obviously apparent that given the previously established law, Defendants should have known that firing Plaintiff because of her free speech

regarding the corruptive behavior of another employee was illegal. Because Defendants knew or should have known of the clearly established law prohibiting Plaintiff's termination in her situation, they are not entitled to qualified immunity. Defendants violated a clearly established right, which was Plaintiff's right to "blow the whistle".

   III.   *Plaintiff has properly stated claims under Georgia law*

      A.   *Plaintiff has properly stated a claim under the Georgia Whistleblower Act*

Pursuant to O.C.G.A. § 45-1-4, nothing in the statute states that Plaintiff cannot have any remedies against individuals who have violated the statute. In fact, the only language that provides specific direction in the statute states that the action must be brought in superior court. *Id*. The statute does not specifically state that the action must be brought against a larger government entity instead of individual defendants. Further, in *Baptiste v. Mann*, 360 Ga. App. 345, 861 S.E.2d 212 (2021), a Sheriff was sued in his official capacity for violating O.C.G.A. § 45-1-4. The suit was upheld by the Appellate Court and was not dismissed because the Sheriff was sued in his official capacity. In the present case, both Defendants Howler and Bancroft are being sued in their official capacities. Pursuant to *Baptiste* and the plain and simple language of O.C.G.A. § 45-1-4, nothing would preclude an action under O.C.G.A. § 45-1-4 against them for violating said statute. Relief can be sought against both of these Defendants. In addition, as Plaintiff has shown above, Bryan County has been served and thus Plaintiff's Georgia Whistleblower claim against Bryan County also has merit and should not be dismissed. As a result of the aforementioned, Plaintiff has sufficiently stated a claim under the Georgia Whistleblower Act and Defendants' motion to dismiss should be denied.

      B.   *Plaintiff has properly stated a claim for assault*

Under Georgia law, an assault occurs when all the apparent circumstances, reasonably viewed, are such as to lead a person reasonably to apprehend a violent injury from the unlawful act of another. *Everett v. Goodloe*, 268 Ga. App. 536, 543, 602 S.E.2d 284, 291 (2004). The act of intentionally causing actual physical harm to another is civilly actionable as a battery and it is the intent to make either harmful or insulting or provoking contact with another which renders one civilly liable for a battery. *Id.* Further, any violent injury or illegal attempt to commit a physical injury upon a person is a tort for which damages may be recovered and actual touching is not a necessary element of the tort of assault; it is only necessary to show an intention to commit an injury, coupled with an apparent ability to do so. *Edwards v. Sabat*, 263 Ga. App. 852, 852-53, 589 S.E.2d 618, 620 (2003)

In the present case, Plaintiff sufficiently pleaded in the SAC that Defendant Bancroft assaulted her. Plaintiff indicated that Defendant Bancroft verbally assaulted her and berated her. Dkt. 30, ¶42. Plaintiff further pled that she was in reasonable apprehension of bodily harm or offensive contact as a result of Defendant Bancroft's actions. Dkt. 30, ¶44. This is sufficient to show that while Defendant Bancroft was berating Plaintiff, that Defendant Bancroft's words to Plaintiff were sufficient to show that she intended to injure Plaintiff, because of the fact that Plaintiff was in fear of bodily harm. The actions of Defendant Bancfroft show that Defendant Bancroft's actions reached the level intent that would cause Plaintiff to be in fear, not just bullying or verbal abuse. It is because of this that Plaintiff has sufficiently pleaded a claim for assault and Defendants' motion to dismiss this claim should be denied.

### C.  *Plaintiff has properly stated a claim for slander*

Under Georgia law, cause of action for defamation consists of four elements: "(1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third

party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the actionability of the statement irrespective of special harm." *Infinite Energy, Inc. v. Pardue*, 310 Ga. App. 355, 356, 713 S.E.2d 456, 460 (2011). Slander (oral defamation) includes making charges against another in reference to his trade, office, or profession, calculated to injure him therein. *Infinite Energy, Inc. v. Pardue*, 310 Ga. App. 355, 357, 713 S.E.2d 456, 460 (2011). This type of defamation is actionable per se and damage is inferred. *Id.* Further, a defamation action will lie only for a statement of fact. *Id.* This is because a statement that reflects an opinion or subjective assessment, as to which reasonable minds could differ, cannot be proved false. *Id.* However, the Georgia Supreme Court has ruled that,

> [t]here is . . . no wholesale defamation exception for anything that might be labeled "opinion." An opinion can constitute actionable defamation if the opinion can reasonably be interpreted, according to the context of the entire writing in which the opinion appears, to state or imply defamatory facts about the plaintiff that are capable of being proved false.

*Id* at 460. More importantly, whether the statements are actually true or false is a question for the jury. *Id* at 461.

In the present case, Plaintiff's SAC pled that Defendant Bancroft stated to another lieutenant that that lieutenant needed to stay away from Bradbury in a manner that alluded to her being incompetent or troublesome. Dkt. 30, ¶129. At issue is Defendant's contention that this statement is not a defamatory statement because it is a statement of opinion. However, this statement could be reasonably interpreted to state defamatory facts about Plaintiff. This is because claiming to another individual (an individual that worked directly with Plaintiff) that Plaintiff was incompetent clearly references her trade as a firefighter and her ability to conduct her trade. As was noted, whether this is true or not is a question for the jury to decide. Further, Plaintiff has pled all of the elements of slander. Plaintiff's SAC pled that Defendant Bancroft

made a false and defamatory statement (that she was incompetent) to a third party (another lieutenant), satisfying the first two elements. The third element is satisfied by the pleading where Plaintiff pled that Defendant Bancroft intended to injure Plaintiff, which is fault that is clearly more severe than negligence. Dkt. 30, ¶132. Finally, because Defendant Bancroft's statement is classified as slander per se, the fourth element is satisfied because damage is inferred and the statement is actionable per se. Thus, Plaintiff has sufficiently pled a claim for slander and Defendants' motion to dismiss this claim should be denied.

### D. Plaintiff has sufficiently stated a claim for intentional infliction of emotional distress.

Under Georgia law, to prevail on a claim of intentional infliction of emotional distress (IIED), a plaintiff must demonstrate that: (1) the conduct giving rise to the claim was intentional or reckless; (2) the conduct was extreme and outrageous; (3) the conduct caused emotional distress; and (4) the emotional distress was severe. *Mayorga v. Benton*, 364 Ga. App. 665, 670, 875 S.E.2d 908, 913 (2022). The defendant's conduct must be so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. *Id*. The extreme and outrageous character of the conduct "may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress by reason of some physical or mental condition or peculiarity." *Id* at 913. More importantly, the Georgia Appellate Courts have noted that the majority of cases addressing whether a particular claim rises to the level of extreme and outrageous conduct involve summary judgment and evidence presented outside of the parties' pleadings. *Id*. In *Love v. Walker*, the appellate court reversed the trial court's dismissal of a plaintiff's complaint, finding that his complaint asserted that the defendants' intentional conduct was extreme and outrageous and that this caused him severe

emotional distress. The claim was thus properly pled as to its essential elements. *See Love v. Morehouse College*, 287 Ga. App. 743, 746 (652 SE2d 624) (2007) (reversing trial court's grant of motion to dismiss claims including intentional infliction of emotional distress; "measuring the basis of those claims at this early stage of the proceedings is premature").

In the case of Plaintiff's IIED claim, the case is simple. Plaintiff has sufficiently pled the necessary elements of IIED. Plaintiff's SAC stated that Defendant Bancroft's actions (conduct) were intentional, willful and malicious, thus satisfying the first element. Dkt. 30, ¶144. Plaintiff then pled that the conduct was extreme and outrageous, satisfying the second element. Dkt. 30, ¶144. Plaintiff then pled that Defendant Bancroft's actions caused her emotional distress, satisfying the third element. Dkt. 30, ¶138. Finally, Plaintiff pled that the emotional distress was severe, stating that the conduct of Defendant Bancroft caused her to have extreme stress, depression, self-harm desires and suicidal thoughts. Plaintiff has clearly pled a claim for IIED and it is important to note that these claims would be further fleshed out in discovery. Just as Georgia courts have previously held, it is too early to dismiss Plaintiff's claim for IIED without having delved into the claim via discovery. Measuring the basis of Plaintiff's IIED claim at this early stage of litigation is premature. As a result, Plaintiff has sufficiently pled a claim for IIED and Defendants' motion to dismiss this claim should be denied.

### E. Plaintiff has sufficiently stated a claim for civil conspiracy.

Under Georgia law, a civil conspiracy has been defined as a combination between two or more persons to do some unlawful act which is a tort or else to do some lawful act by methods which constitute a tort. *Sofate of Am., Inc. v. Brown*, 171 Ga. App. 39, 40, 318 S.E.2d 771, 774 (1984). The gravamen of any civil conspiracy claim is not the alleged collusion, but tortious

conduct committed against the plaintiff which proximately causes an injury. *Savannah Coll. of Art & Design v. Sch. of Visual Arts*, 219 Ga. App. 296, 296, 464 S.E.2d 895, 896 (1995).

In the case of Plaintiff, and as shown above, Plaintiff has sufficiently pled claims for the torts of assault, slander and IIED. Throughout these claims, Plaintiff has pled that Defendants Bancroft and Howell's actions and extreme indifference caused Plaintiff to suffer injuries. This is sufficient to state a claim for civil conspiracy because Defendants' tortious actions were pled to have caused injuries and damages to Plaintiff. As the law notes, the collusion is not the main contention that matters, but rather that the conduct led to Plaintiff's injuries. As such, Plaintiff's has pled that Defendants tortious conduct in assault, slander and IIED have caused her injuries. This means that Plaintiff has sufficiently pled a claim for civil conspiracy and Defendants' motion to dismiss this claim must be denied.

      F. *Plaintiff's state-law claims are not barred by sovereign immunity and/or official immunity.*

Defendants are correct in that they would be entitled to immunity for their performance of governmental functions. However, this argument is immaterial because of the fact that Defendant Bryan County's actions in the present case, which encompasses the actions of both Defendant Bancroft and Howell, constitute ministerial functions. Georgia law is clear that a municipality may be liable for the negligent performance of its ministerial functions. *City of E. Point v. Young*, 340 Ga. App. 223, 224, 797 S.E.2d 156, 158 (2017). Georgia law has also shown that there is a clear dichotomy between both governmental and ministerial functions. Governmental functions traditionally have been defined as those of a purely public nature, intended for the benefit of the public at large, without pretense of private gain to the municipality. *Atlanta Metro Leasing, Inc. v. City of Atlanta*, 353 Ga. App. 785, 789, 839 S.E.2d 278, 284 (2020). Governmental functions

derive no special benefit for the corporation. *Id.* On the other hand, ministerial functions are those involving the exercise of some private franchise for the private profit or *convenience* of the municipality in which the general public has no interest. *Id.* Ultimately, the determination of whether a function is governmental or ministerial in character for purposes of municipal sovereign immunity focuses broadly on the nature, purpose, and intended beneficiaries of the function performed by the municipal corporation. *Id.*

In the present case, the actions by the Defendants encompassed ministerial functions. This is because their discriminatory treatment, harassment and retaliation against Plaintiff were not done for the benefit of the general public. The general public had no interest in the way Defendants acted against Plaintiff. It can also be said that Defendant Bancroft's tortious conduct toward Plaintiff also did not benefit the general public and the general public had no interest in the tortious conduct of Plaintiff. On the contrary, Defendants' actions against Plaintiff were for their own private convenience and special benefit because their tortious actions and discrimination toward Plaintiff were meant to benefit themselves and not the public. There is absolutely no scenario where the general public would have an interest or would benefit from Defendants Bancroft and Howell's harassment, discriminatory treatment and retaliatory treatment against Plaintiff. Defendant Bryan County will likely argue that because this occurred while all Defendants and Plaintiff were employed by BCFES that the actions fall under a governmental function. The operation of a fire department is a governmental function, but common sense clearly dictates that harassment, discriminatory treatment, and retaliation are not within the operation of fire department.  As such, Defendants' actions constituted ministerial functions which ultimately were performed

negligently and intentionally against Plaintiff. As a result, Defendants have waived sovereign immunity and are liable to Plaintiff.

## Conclusion

Plaintiff has shown that she has properly stated claims both under federal law and under Georgia law. More specifically, Plaintiff has shown that her claims are sufficiently stated to show that they are plausible. Given that the Court must take all of Plaintiff's allegations as true, the inference can be drawn that Defendants are liable to Plaintiff for their actions. More importantly, Plaintiff's claims can be further substantiated with the formal discovery process. To dismiss Plaintiff's claims this early in the proceedings would be premature, given that discovery would likely substantiate Plaintiff's claims even more. Further, with regard to Defendant's claims of defective service, Plaintiff in fact has made valid, proper service on Defendant Bryan County, not once, but two times: once by the Bryan County Sheriff's Office and a second time using a private process server.  Plaintiff prays this court to issue an order denying Defendant's 12(b) Motion to Dismiss Plaintiff's SAC.

In the alternative, should the Court find that Plaintiff's SAC has failed to state a claim under federal laws, Plaintiff requests the Court to sever and dismiss in part those claims only. Should the Court dismiss all federal claims, Plaintiff respectfully asks the Court to remand the remaining claims back to the State.

Submitted, this, the 28th day of April, 2025.

 /s/  Joseph J. Steffen, Jr.
Jospeh J. Steffen, Jr.
Ga. Bar No.:  677766
*Attorney for Plaintiff*

Law Offices of Joseph J. Steffen, Jr.
223 W. York Street

Savannah, GA 31401
(912) 999-8444 Office
(912) 604-4147 Cell
joe@joesteffen.com

# CERTIFICATE OF SERVICE

I certify that on this day I have served counsel for all parties with a copy of the **PLAINTIFF'S RESPONSE AND BRIEF IN OPPOSITION TO DEFENDANTS' 12(b) MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT** using PACER, this Courts designated e-filing service, which will deliver a copy to all counsel of record via electronic mail delivery service.

Richard K. Strickland, Esq.
rstrickland@brbcsw.com

Emily R. Hancock, Esq.
ehancock@brbcsw.com

BROWN, READDICK, BUMGARTNER, CARTER,
STRICKLAND & WATKINS, LLP
Post Office Box 220
Brunswick, GA 31521

Submitted, this, the 28th day of April, 2025.


 /s/  Joseph J. Steffen, Jr.
Jospeh J. Steffen, Jr.
Ga. Bar No.:  677766
*Attorney for Plaintiff*

Law Offices of Joseph J. Steffen, Jr.
223 W. York Street
Savannah, GA 31401
(912) 999-8444 Office
(912) 604-4147 Cell
joe@joesteffen.com